The action being continued nisi for advisement, the opinion of the Court was delivered at an adjourned session of the last March term in Suffolk, holden in July, by
Parker, C. J.
(After briefly staling the facts.) The principal question which arises out of these facts is, whether the inhabitants *227 of the town of Fairhaven had lawful right and authority, in their corporate capacity, to raise money, and to cause it to be assessed upon the polls and estates within the town, for the purpose stated; that is, to give additional wages to the militia, and for other purposes of defence.
The right of towns to grant or raise money, so as to bind the property of the inhabitants, or subject their persons to arrest for nonpayment, is certainly derived from statute. Their corporate powers depend upon legislative charter or grant; or upon prescription, where they may have exercised the powers anciently without any particular act of incorporation. But, in all cases, the powers of towns are defined by the statute of 1785, c. 75.
In relation to the power of raising money, and causing it to be assessed and collected, they are restricted to the cases of providing for the poor, for schools, for the support of public worship, and other necessary charges. The tax which was exacted of the plaintiff must come within the last clause, or it cannot be supported. The phrase necessary charges is indeed general; but the very generality of the expression shows that it must have a reasonable limitation. For noné will suppose, that, under this form of expression, every tax would be legal which the town should choose to sanction. The proper construction of the terms must be, that, in addition to the money to be raised for the poor, schools, &c., towns might raise such *sums as should be necessary to meet the ordinary expenses of the year ; such as the payment of such municipal officers as they should be obliged to employ, the support and defence of such actions as they might be parties to, and the expenses they would incur in performing such duties as the laws imposed, as the erection of powder-houses, providing ammunition, making and repairing highways and town roads, and other things of a like nature ; which are necessary charges, because the effect of a legal discharge of their corporate duty. The erection of public buildings for the accommodation of the inhabitants, such as townhouses to assemble in, and market-houses for the sale of provisions, may also be a proper town charge, and may come within the fair meaning of the term necessary; for these may be essential to the comfort and convenience of the citizens. But it cannot be supposed that the building of a theatre, a circus, or any other place of mere amusement, at the expense of the town, could be justified under the term necessary town charges. Nor could the inhabitants be lawfully taxed for the purpose of raising a statue or a monument, these being matters of taste, and not of necessity ; unless, in populous and wealthy towns, they should be thought suitable ornaments to buildings ot squares, the raising and maintenance of which are within the duty and care of the governors or officers of such towns.
With respect U the defence of any town against the incursions ol *228 an enemy in time of war, it is difficult to see any principle upon which that can become a necessary town charge. It is not a corporate duty to defend the town against an enemy. This is properly the business of the state or government, and is the most essential consideration for the obligation of the citizen to contribute to the general treasury. The government is to protect, and the citizen is to pay. By the Constitution of the United States, this duty is devolved upoi the national government; and although it may be impracticable, in so extensive a * territory, to furnish competent security to every section or point, yet it does not follow that corporations of limited powers, like towns, can take upon themselves the duty, and exact money of their citizens for the execution of it.
It cannot be pretended, that a town could lawfully tax the inhabitants to raise and maintain a military force for their protection against an enemy. Such a protection, it is obvious, can only be lawfully given by the state 0% ruling power ; and, if that is not adequate, the voluntary exertions or contributions of the inhabitants must supply the deficiency. Whether, for any extraordinary expense falling upon individuals, in consequence of the inability or neglect of government to afford them security, such individuals may claim to be reimbursed by the public, is a question for others to determine, not for us. Whether any money actually in the treasury, beyond what is needed for the ordinary expenses of the town, and which is unappropriated, may not be disposed of, in pursuance of a vote of the inhabitants, for the common defence of the inhabitants, is a different question from the present, and which we need not nqw determine.
We confine ourselves to the case before us ; which is that of a tax, founded upon a vote of the inhabitants to raise money for the purpose of giving additional wages to those of the inhabitants who should be called, as militia-men, to do duty, in pursuance of lawful authority. Now, to furnish the quota of militia is no part of the, corporate duty of a town, or to pay them. The militia are drafted from those divisions and subdivisions of the citizens which are established by law, without regard to the territory or jurisdiction of towns ; and provision is made by law for the payment of such as may be called into actual service. To give additional wages, in order to encourage such as may be drafted, may evince the sense of danger, and the patriotism of a town ; but it does not fall within any duty imposed by law, and it is not certain that it would produce any valuable end. For, instead of a uniform and * equal payment of all those who in other respects are on a footing of equality, it would probably cause jealousies and dissensions, which might be highly injurious to the public service. At any rate, such a tax can, in no view, be considered as laid for the discharge of *229 necessary town charges. For no necessity of incurring the expense exists ; and the additional compensation intended is nothing more than a gratuity or bonus, which may well come from individual bounty, but cannot be the subject of legal exaction.
We are satisfied, therefore, that there was no lawful authority to raise the sum in question ; and it is important that it should be known, that the power of the majority over the property, and even the persons, of the minority is limited by law to such cases as are clearly provided for, and defined, by the statute which describes the powers of these corporations.
The question is not entirely new ; a decision having taken place with respect to the power of parishes to raise money which is entirely applicable to the case before us. For the powers of towns, as well as parishes, are either entirely derived from some legislative act, or defined and limited by the general statutes prescribing the powers and duties of both classes of corporations. In the case of Bangs vs. Snow & al., which was cited in the argument, one question which arose respected the power of a parish to raise by vote a sum of money, and assess it upon the inhabitants, for the purpose of defraying the expense of procuring an act of incorporation ; and the Court were unanimously and clearly of opinion, that the parish had no such authority ; and refused to hear an argument, saying, it was questioning first principles ; for that a parish had power, by statute, to raise money only for the purposes expressed by law, and for expenses incident* to such purposes. And it is to be observed, that, after specifying the particular objects of taxation, the statute gives the power of raising money for all other necessary parish charges. * This doctrine is recognized in a subsequent decision (5 Mass. Rep. 547), wherein it is held, that the power of raising money in towns and parishes is limited, by statute, to the objects expressly provided for, and such expenses as are necessarily incident. We are entirely satisfied with these decisions, and that the present case is governed by them.
With respect to the unanimity of the vote in town meeting, upon which some stress seemed to be laid by the counsel for the defendants, as evidence of an assent to the vote ; this circumstance can have no effect in the present case, as it is agreed that the plaintiff was not present at the meeting. If the maxim, volenti non Jit injuria, can apply at all, so as to take away the remedy which any of the inhabitants of the town would otherwise have had for the forcible collection of this tax, it must be applicable to those wbc were present and actually assented. Such a constructive assent as is urged from the common principle, that all the inhabitants are pre sumed to assent to what is done at a regular meeting, cannot be admitted to deprive one of his right; for the presumption is, that *230 towns, when convened, will pass none but legal votes ; and to all such the assent of those who are absent may be presumed. Whether the agency of those who were present, in producing the vote, will prevent them from recovering, need not be now decided.
Thus, then, the general question is disposed of; but it is further relied upon in the defence, that the defendants, being, in the assessment of taxes authorized by vote, servants or ministerial officers, ought not to be subject to an action for the mere execution of an official duty.
It is true, that, generally, executive officers are not liable to actions for the regular execution of precepts apparently lawful and which come from an authority which has jurisdiction over the subject. But we cannot view assessors in this light. They are not compellable to assess an illegal tax. They may exercise their judgment on the * subjects for which the money appears to be voted ; and they may refuse to cause the collection to be enforced, if they deem the tax illegal. If they are not liable to an action for causing an arrest, or the seizure of property, for the non-payment of an illegal tax, it is difficult to find any remedy for an injured citizen in cases of this nature. The constable or collector is not answerable ; because he acts in obedience to a warrant under the hands and seals of the assessors, who have jurisdiction over the subject, and authority to assess a tax, and to issue their warrant; and it would be dangerous to vest such officers with a right to question the legality of the proceedings which precede the assessment.
If an action would lie against the town, it could only be for the money actually received into the treasury ; which, in most cases of distress, would be but a partial remedy. The assessors must, then, be answerable, or there will be a defect of justice. In the cases first cited the action was against the assessors, and no objection was made on that ground ; and it may be also remarked, that actions have been uniformly sustained against assessors, when a sum has been assessed which was not within the authority of the town to raise.
It is further objected, that, as part of the money composing this tax was raised for legal purposes, the assessment must be considered so far legal as to support the warrant issued by the defendants ; otherwise, they may be held to pay in damages for money which lawfully belonged to the town. But, when a part of a tax is illegal, all the proceedings to collect it must be void ; as it is impossible to separate and distinguish, so that the act should be in part a trespass, and in part innocent.†" This point may also be considered as settled in the two cases cited ; for in both those cases the greater part of the sum assessed was for lawful purposes. Whether the damages *231 may not be diminished by the jury, in proportion to the sum which shall appear to be a lawful * subject of taxalion, may be considered in the inquiry which is yet to be had by the jury.
Whether it would be wise to extend and multiply the objects for which towns may be authorized to raise money is a question for the legislature, and not for us, to decide. It is sufficient now, that they are limited by law ; and some limitation is undoubtedly just and necessary, to prevent the minority from being at the disposal of the majority. Whether that defence against the casualties of war which is not within the ordinary reach of the superintending government should be committed to the numerous corporations which exist in the State, or should be left to the voluntary and patriotic exertions of individuals, or the retribution of the government, is a question for statesmen, and not for judges, to decide, in the present state of the law ; towns now being the creatures of legislation, and enjoying only 'the powers which are expressly granted to them. It may be well, also, to consider, that, in case of invasion, it is very seldom that any corporate property is put in hazard ; the destruction which the enemy may cause being generally directed against the property of individuals, who are at liberty to operate, and dispose of their own money, in such manner as shall seem to them best, to avoid the dange -

Defendants defaulted

 Libby vs. Burnham & al., 15 Mass. Rep. 147.