SCHOHARIE
1817.

The People
v.
Kesler.

## Municipal Court.

### BOSTON, Oct. 15, 1824.

The Commonwealth, by complaint of Benj. Pollard, Esq. City Marshal,
v.
Stephen Bean, Appellant.

This case was brought by appeal from the judgment of the Police Court of the city of Boston. It was commenced on the 29th May last, and the judgment was there rendered on the 23d of June following. The complaint was founded on an ordinance of the City Council, which was enacted on the 29th April last, entitled "An ordinance to regulate the keeping of dogs within the City of Boston,*

* CITY OF BOSTON.

*An Ordinance to regulate the keeping of Dogs, within the City of Boston.*

SECT. 1. *Be it ordained by the City Council,* That from and after the passing of this ordinance, no dog shall go at large or loose, in any street, lane, alley, or court, nor in any uninclosed or public place in this city, until the owner or keeper of such dog, or the head of the family or keeper of the house where such dog is kept or harboured, shall have paid to the city clerk the sum of five dollars, for a license for such dog to go at large, nor unless he shall also cause a collar to be worn by such dog, having the christian and surname of the owner thereof, legibly written, stamped, or engraved thereon.

BOSTON,.  and was brought against Mr. Bean, to recover of him
1824.     the penalty of ten dollars, " for .permitting a certain
The Com'th dog belonging to him to go at large, he not having paid
v.        to the City Clerk the sum of five dollars, for said dog to
Bean.     go at large, against the ordinance aforesaid." At the
          trial in September, the defendant's counsel moved for

SECT. 2. *Be it fu rter ordained,* That the licenses which have
been or shall be issued as aforesaid, shall endure and be in force,
until the tenth day of July, next after the time of issuing the same,
and no longer; but they may and shall be at that time renewed,
and thereafter annually, on payment to the city clerk of the like
sum of five dollars for each renewal; and[in case any dog shall be
found loose or going at large as aforesaid, contrary to the provi-
sions of this ordinance, the owner or keeper thereof, or the head
of the family, or the keeper of the house where such dog is kept
or harboured, shall forfeit and pay the sum of ten dollars, one half
for the use of the prosecutor, to be recovered by complaint before
the Police Court.

SECT. 3. *Be it further ordained,* That if any person shall keep,
or allow to be kept within this city, any dog which shall by barking,
biting, howling, or in any other way or manner be offensive to
any person or persons whomsoever, the mayor, on complaint
thereof being made to him, shall issue notice to the person keep-
ing or permitting such dog to be kept, or to the owner thereof, com-
manding such person or owner forthwith to cause such dog to be re-
moved and kept beyond the limits of the city, or to be destroyed;
and in case such person or owner shall, for the space of three days
after such notice, neglect or refuse to obey such order, he shall
forfeit and pay the sum of six dollars, for every week which shall
elapse, until he shall obey the order aforesaid; to be recovered by
complaint before the Police Court; one half for the use of the city,
and the other half for the use of the prosecutor: *Provided,* That
the Court shall be satisfied that such dog was offensive to one or
more persons in manner aforesaid.

SECT. 4. *Be it further ordained,* That if any person, after being
convicted under the provisions of the third section of this ordi-
nance, shall still refuse or neglect to remove or destroy his dog,
on being ordered so to do; or if any dog, of which no owner or
keeper shall be discovered, or whose owner or keeper shall refuse
or neglect to take out a license for him, shall be found going at
large, contrary to the provision of this ordinance, it shall be the
duty of the mayor to cause such dog or dogs to be destroyed.

SECT. 5. *Be it further ordained,* That nothing in this ordi-
nance contained shall be applied to any dog owned and usually
kept out of this city.

SECT. 6. *Be it further ordained,* That the order entitled " An
order· respecting the going at large of dogs," passed the seventh
day of July last, is hereby repealed: *Provided,* That the same

the case to be dismissed, on the ground, that the justices of the Police Court, where the complaint originated, the judge of this court, and the jurors, were ratable and rated inhabitants of the city, interested in one half of the penalty, which would be paid to the city treasury, and so not competent to try the case. But these objections were overruled at the trial, and a verdict was rendered against the defendant.

After the verdict, the Counsel for the parties, Benjamin Rand, Esq. for the defendant, and J. T. Austin, Esq. county attorney, for the commonwealth, were fully heard on all points of law in the case. And at the present term the opinion of the court was expressed and the judgment rendered.

Hon. PETER O. THACHER.

The preliminary objections, made by the defendant's counsel, to the jurisdiction of the Police Court, and of this tribunal; to the array of the pannel of jurors, and to each juror; to the competency of David Eckly as a witness; and to the validity of the ordinance, were overruled at the trial. It being understood at the time, that he was to be heard upon them, and that they were to be deliberately settled afterwards. The jury returned a verdict against the defendant.

shall be and remain in force, for the cognizance and punishment of all offences heretofore committed against the provisions thereof.

In Common Council, April 26th, 1824. This ordinance being twice read, passed.

JOHN WELLES, President.

In the Board of Aldermen, April 29th, 1824. This ordinance being read, passed.

JOSIAH QUINCY, Mayor.

A true copy.
Attest,
S. P. M'CLEARY, City Clerk.

Since that verdict was rendered, the counsel for the parties have been fully heard; and I confess myself to be much indebted to their laborious and faithful investigation of the several points of law, exhibiting an array of authorities and arguments, which were worthy of a cause of greater magnitude.

As the present is a prosecution founded on an alleged violation of law, the government is to be held strictly to maintain the complaint, both in form and substance, and the defendant is entitled to the benefit of all legal presumptions in his favour. For forfeitures and penalties are odious, and are not to be inflicted in doubtful cases.

The first point of law, on which the defendant relies is, that the complaint was instituted before a court, which was not proper to try it, because one half of the penalty will enure to the city, of which the justices of that court were rateable and rated inhabitants. That a judge must not be interested in the cause which he is to try, and that an act giving authority to a man to be a judge in his own cause, would be against Magna Charta in England, and against our own constitution here, are truths which require neither proof nor comment. It is sufficient, that the principle is recognized by our Supreme Court, in the case of Peirce v. Atwood, (13 Mass. Rep. 324.) and it cannot be better expressed than in the language of Lord Mansfield, in the case of Herketh v. Braddock, (3 Burr. 1847.) "There is," he says, "no princi-
"ple of law more settled than this, that any degree, even
"the smallest degree of interest in the question depend-
"ing, is a decisive objection to a witness, and much
"more so to a juror, or to the officer by whom the juror
"is returned; and that the minuteness of the interest

" will not relax the objection ; for the degrees of influ-
" ence cannot be measured; no line be drawn, but that
" of a total exclusion of all degrees whatever."

But while the general principle is acknowledged, it is
contended, on the part of the government, that the pre-
sent is an exception, and that it was necessary for the
justices of the Police Court to take jurisdiction, or there
would be a failure of justice, which would be a reflection
on the wisdom of the government. Mostyn v. Fabrigas,
(Cowp. 161.)

Was it necessary then, that this prosecution should be
brought in the police court ?

By the act of 1821, ch. 108. sec. 2. Mass. Laws, " to
" the justices of the police court is given cognizance of
" all crimes, offences, and misdemeanours, whereof jus-
" tices of the peace may take cognizance by law, and
" of all offences cognizable by one or more of said justi-
" ces, according to the by-laws, rules, and regulations,
" which may be established by the proper authori-
" ty of the city of Boston." And by the 3d section
it is provided, " that no process returnable before a jus-
" tice of the peace residing in the town of Chelsea, ex-
" cept for cases of complaint arising in Chelsea, shall be
" served within the city of Boston."* So that this com-
plaint, *arising in this city*, the jurisdiction of the case,
whether in form of a civil action or of a criminal com-
plaint, does, in fact, belong to the justices of the Police
Court, inasmuch as no process can be served on the de-
fendant, which should be made returnable before a jus-
tice of the peace in Chelsea. It was necessary, there-
fore, that the justices of the police court should take ju-
risdiction in this case. And for the same cause this tri-

* The county of Suffolk consists of the city of Boston and the
town of Chelsea.

bunal must sustain appeals from that court. Now, if it were true, as is alleged, that half the penalty in this case, goes to the city treasury, it could not be denied, that we have a remote corporate interest in the event; yet, inasmuch as the jurisdiction is expressly conferred on us by statutes of the commonwealth, " the law must be con- " sidered as repelling the interest," according to the decision of the Supreme Judicial Court, in the case of the commonwealth v. Thomas Ryan, (5 Mass. Rep. 90.)

But on examining the ordinance in this case, it does not appear, that either the sums which is to be paid for the license, or the penalty for its violation, enure to the city—*the former goes to the city clerk, who is not required to account for it, and half of the latter to the prosecutors.* The ordinance might have declared to whom, or to what use the other half should go. But in the silence of the ordinance on this subject, I cannot infer that it is for the use of the city of Boston. And although it is said in the complaint, " *that the other half is for the use of the. city,*" that doth not appear by inspection of the ordinance, and on its payment to the treasurer, it must be passed by him, with all other fines and penalties, to the credit of the commonwealth. Hence, all the objections to the competency of the justices of the Police Court, to restrain the original complaint, to the judge and clerk of this court; to the array of the pannel of jurors by the Mayor and Aldermen of this city, by whom they were drawn, to each of the jurors, and to the competency of Mr. Eckley as a witness, must fall to the ground ; it not appearing that we have any more interest in this penalty, than in any other fine, which is paid to the commonwealth.

The second objection on the part of the defendant is

that the complaint is essentially defective in form, and that no judgment can be rendered on it.

The complaint sets forth, that by virtue of an act of the commonwealth, entitled " an act establishing the city of Boston," the Mayor and Aldermen and Common Council, upon the 29th of April, 1824, passed a certain ordinance to regulate the keeping of dogs within this city, in which it is, among other things, ordained. " that from and after the passing of said ordinance, no dog shall go at large or loose in any street, lane, or court, nor in any uninclosed or public place in this city, until the owner or keeper of such dog, or the head of the family, or keeper of the house where such dog is kept or harboured, shall have paid to the City Clerk, the sum of five dollars for a license for such dog to go at large ; nor unless he shall cause a collar to be constantly worn by such dog having the christian and surname of the owner thereof legibly written, or engraved, or stamped thereon ; and also that in case any dog shall be found loose or going at large, as aforesaid, contrary to the provisions of said ordinance, the owner, &c. shall forfeit and pay the sum of ten dollars, one half for the use of the city, and the other half for the use of the prosecutor, to be recovered by complaint before the Police Court." After this recital, it charges, "that the defendant, on the 25th of May, 1824, was the owner and keeper of a certain dog, which was then and there found loose and going at large in Beacon Street, he not having paid to the City Clerk the sum of five dollars for a license for said dog, against the ordinance aforesaid."

It is objected to this complaint, that the charter of the city, and the by-law are not set forth. But by the 5th sec. of the act of 1824, ch. 28, it is declared, " that in

all prosecutions before the Police Court, founded on the special acts of the legislature, or the ordinances or by-laws of the city of Boston, it shall be sufficient to set forth in such complaint, the offence fully and plainly, substantially and formally, and in such complaint it shall not be necessary to set forth such special act, by-law, or ordinance, or any part thereof." Thus these special acts and by-laws are placed on the ground of general laws, and it is made the duty of the court to take notice of them, without the record being incumbered with their recital at full length. But to this it was argued, that as this act was passed after the complaint had been instituted, although before the judgment was rendered in the Police Court, it did not cure the defect, because it would operate like an *ex post facto* law, and so would be contrary to the 24th article of the " Bill of Rights." But this act was not made to punish an innocent action done before the existence of the law, and it operates only on the forms of proceeding. The only effect of quashing the present complaint for this cause, would be, to authorize a new one to be brought *in precisely the same words ;* for there is no doubt that it is sufficient in form and substance as the law now is, even if a doubt could be entertained of its sufficiency at its commencement. For these reasons, I consider that in point of form, the complaint is sufficient.

The great objection to the ordinance, on which the counsel for the defendant principally relies, is, that the city authority had no right to pass it, because it contravenes the general laws of the commonwealth. It is argued, that it is not within the objects for which towns are incorporated, and that it is not made pursuant to law ; but that it is an independent and unauthorized act of

legislation, which neither the city of Boston nor any other town in the commonwealth could enact.

It becomes, therefore, necessary to consider the extent of the power of towns to enact by-laws, it being justly admitted by the Attorney for the commonwealth, that this city has no other or greater power in this respect, except as to the penalty for their observance, than any other town in the commonwealth.

The inhabitants of each town are declared by law (1785, c. 75.) " to be a body politic and corporate, and are empowered, to make such by-laws for directing the prudential affairs of their town, as they shall judge most conducive to the peace, welfare, and good order thereof, and to annex penalties for the observance of them, not exceeding thirty shillings for one offence, to enure to such uses as they shall therein direct, provided they be not repugnant to the general laws of the government." Like power is considered at common law, as necessarily and inseparably incident to every corporation. 1 Black. Com. 475. And the same power is given to this city by the 15th section of the charter, pursuant to the second amendment to the constitution of the commonwealth, with authority to annex penalties, not exceeding twenty dollars, for the breach of any city by-law, and with a farther provision, that any by-law of the city may be annulled by the legislature.

The objection to this ordinance does not arise from its containing a penalty, but because a penalty is declared, to enforce the observance of a by-law, which imposes the payment of what is deemed to be an illegal tax. It is argued, that it is illegal, because by the general law of the commonwealth, (1812, c. 146.) any dog may go at large, provided he wear a collar with the name of his

BOSTON,
1824.

The Com'th
v.
Bean.

owner on it, the owner being answerable for any damage which he shall commit in double the amount. But this ordinance declares that, within this city, no dog shall go at large unless his owner shall take out a license, for which he shall pay five dollars. The object is to discourage the keeping of dogs, by confining the number to those who are able and willing to pay five dollars for the privilege. I confess there is good reason for such regulation, when it is considered, that this animal is liable, especially during the hot season of the year, to a species of madness, which is highly dangerous and destructive to human life. But although there is excellent reason for diminishing the number of dogs ; yet I do not see, if it is competent for the city to impose a tax upon the owners of dogs, why they may not also on the owners of other domestic animals, as horses, goats, swine, and singing birds ; why not on retailers and inn-holders ; why not on the owners of trucks and of carts ; and on many other persons and objects, which it would be easy to enumerate ? It is argued, however, that dogs are a nuisance ; that they are considered by the general law of the commonwealth as mischievous and dangerous animals ; and that this ordinance is *in aid* of those laws and *not repugnant* to them. But to this I reply, that if it were true that they are a nuisance, what right has the city to license such nuisance, and to derive a revenue from it? It is not true, however, that they are a nuisance, and for many purposes they are considered as valuable domestic animals. The objection to the tax arises from the 23d article in the Bill of Rights, which declares, that no charge, tax, impost or duties, shall be imposed on the subject without the consent of the people, expressed by an act of the legislature.

BOSTON,
1824.

The Com'th
v.
Bean.

I know of no case, wherein a town may undertake to assess money on the inhabitants, or on any portion of them, even with their consent, directly or indirectly, unless with the sanction of a legislative act.* Thus, to defray the expenses of civil government; to support religious worship, schools, paupers, and highways; for the most useful purposes of municipal order and comfort, as maintaining lamps in the streets, providing a watch, preserving the public health, and removing nuisances; and so likewise to enable the city government to order many things of great necessity and convenience, as regulating the erection of wooden buildings, of livery stables, providing fire-engines, and regulating proceedings at fires, paving the streets and sidewalks, the standing of carts and trucks in the streets, the keeping and transportation of gunpowder, and the carrying on of divers trades, there are general or special laws of the commonwealth, authorizing assessments, and containing proper regulations. If these things belong to the prudential affairs of towns, which they, in their corporate capacity, might regulate, why this expense and minuteness of legislation? I know not any instance, in which a town has ever before assumed the authority of granting a license for what is permitted to be done by the laws of the commonwealth; and this is the first instance known to me, not only where the question has arisen, but where a town has undertaken, without an act of the legislature, to require the citizens to pay a sum of money for the enjoyment of a privilege, which they would otherwise be entitled to enjoy freely. The acts of the legislature are the supreme law of the land. It is not competent for individuals or for towns to add to them, or to take from them. Were it

* 13 Mass. R. 272. Stetsen v. Kempton et al.

otherwise, there would not be either freedom or safety. The legislature has always shown great readiness to pass any laws for the government of this town, its peace, health, ornament or safety, which were requested by the inhabitants, or by the representatives in the general court : and I cannot doubt their readiness to sanction a law, similar to that which is now in question, upon the application of the city council for that purpose. But that any city or town in the commonwealth may add to, or limit the acts of the legislature, supposes these corporations to possess a paramount power of legislation ; and if they may add to the general laws, they may also repeal the fundamental laws of the state.

A similar question arose in England in the time of Charles the 2d. It was the case of Player v. Vere, in Sir Thomas Raymond's Rep. pp. 288—324. The mayor, aldermen and common council of the city of London, claiming under an ancient prescriptive right to make such ordinances as were profitable, agreeable to good faith, and reasonable, upon the 2d of April, 1677, in common council enacted, that the governors of Christ's Hospital should have the government of all cars, carts, and cartmen within the city ; that no more than four hundred and twenty carts should be allowed to work from place to place within the city ; that each of them should have the city arms upon the shaft in a piece of brass, with the number of it ; that 17s. 4d. per annum should be paid for a car room, and 20s. upon any admittance or alienation of a car room, which sums were to be applied towards the relief and maintenance of the poor orphans in that hospital ; and that if any person should presume to work any car within said city, for hire, by himself or servant, not being duly licensed, such person should, for every such offence, forfeit and pay 13s. 4d.

The defendant was arrested in the city and imprisoned on a bill of debt for 13s. 4d. on the 2d of November, 29 Car. 2. upon the act, and brought a writ of habeas corpus returnable into the King's Bench, to remove the cause into that court, and to know why he might not be discharged.

The case was repeatedly argued with great learning and ability by very eminent counsel on both sides. Against the by-law it was alleged, " that it was unrea" sonable and void, because the common council had no " power to restrain the number of carts, or to impose fines, " and that so it was in restraint of the liberty of trade."

Sir George Jeffries and Sir Robert Sawyer argued in favour of the by-law, " that though it was naught for the " fine, it might be good for the rent ; for a by-law might " be good for one part and bad for another. And as for " the number of carts, if they cannot be restrained, the " streets would be pestered." Afterwards it was argued, " that this case differs from all cases of by-laws made by " other corporations, in this, that we shall presume *primo* " *intuitu* that this by-law is good ; because it is made by " the body of the great and most famous city of London ; " made, not only by the lord mayor and aldermen, but " also by the common council, representing all others the " citizens, attended and assisted with the recorder, coun" sel at law, and very many others learned and well read, " not only in the laws of this kingdom, but in all other " human learning. So that he that will suddenly censure " such a by-law without well weighing it, and strictly " comparing it with the rules by which all by-laws are " to be examined, will undertake a great task."

After great consideration of the authorities, it was finally adjudged in Hilary Term, 31 and 32 Car. 2. by

BOSTON,
1824.

The Com'th
v.
Bean.

the whole court, *nemine contradicente,* "that the by-law "was not good by reason of the fine and rent, but in all "things else very good."

The reasons of this judgment are not stated, but it appears to me that it was on the principle, that it was contrary to the liberties of England, to exact from the subject any money, whether as a penalty or for a rent, which was not warranted by law. Mag. Chart. c. 29. 2 Inst. 45. 47. And so, I consider, is the law of this commonwealth.

It has been further argued, that the ordinance in this case is against law, because in addition to a pecuniary *penalty,* it contains a *forfeiture.* By the 2d section, if any dog is found loose or going at large in the city, whose owner or keeper shall not have paid to the city clerk five dollars for a license, the owner or keeper incurs a penalty of ten dollars. And in the 4th section it is ordained, that if any dog shall be found going at large, whose owner or keeper shall refuse or neglect to take out a license for him, it shall be the duty of the mayor, to cause such dog to be destroyed. So that after the owner has paid the penalty, the dog is still liable to be destroyed, notwithstanding his owner may have furnished him with a collar according to the statute. If, then, there were no doubt as to the right of the city to require the owner to pay for a license, and to impose a penalty for the neglect of payment; yet it is very clear, that the ordinance is defective in requiring the dog to be killed : for by the general act and by the charter, the city can only annex a *pecuniary penalty,* of limited amount, to secure the observance of their by-laws. The forfeiture of the life of the dog is therefore clearly illegal. Hence the learned counsel for the defendant infers, that

the ordinance is for this cause wholly bad, and he relies on the case of Kirk v. Nowill et al. (1 Term R. 118.) to support the position. The by-law in that case was made by a manufacturing corporation, and declared, that certain articles, manufactured in a deceitful and unworkmanlike manner, should be liable to seizure and to be forfeited. The by-law prescribed no pecuniary penalty, but created a forfeiture of the article. Whereas the act of incorporation (21 Jas. 1.) empowered them to make reasonable by-laws, and to annex to the breach *a fine*, or *amerciament* only. In directing the seizure and destruction of the article, the by-law was not pursuant to the charter, and so was *wholly bad*. But in the case of Player v. Vere, which has been already relied upon as decisive in favor of the defendant upon another point, the whole Court of King's Bench were of opinion, that a by-law might be good for part, although it might be bad for the residue : and it would thence follow, that so much as is good would be sustained in a court of justice, and the residue rejected. If, then, there were no other but this last objection in this case, I should have no hesitation to decide, that the ordinance is good for the penalty, but bad for the forfeiture. But as I am of opinion, that the city cannnot require from the owners of dogs going at large the payment of a sum of money for a license, it is substantially defective and invalid for this cause.

I have come to this result with reluctance, after much consideration, and against my first impression ; for the object of the by-law is both salutary and necessary. Had I finally entertained a doubt, I should have felt bound to render such judgment as would have enabled the defendant, by a bill of exceptions, to obtain the

BOSTON,
1824.

The Com'th
v.
Bean.

judgment of the Supreme Court. But all criminal suits, in the name and behalf of the commonwealth, are defended at the sole risk and charge of the accused party. A judgment against the defendant in this case would throw on him the fine and costs, which he must pay or be committed to prison: and if he should finally succeed, to obtain a reversal of the judgment in the Supreme Court, I do not know how he can compel the commonwealth to refund the money, or to indemnify him for the personal injury which he might sustain. I consider him entitled to the benefit of my opinion in his favor.

The verdict is set aside and the complaint dismissed.