Shaw, C. J.
This is an action for money had and received,
to recover back money paid by the plaintiff to the tax-collector, on the ground that the city, by their collector and treasurer, have received a sum of money, which they have no just right to retain. The ground upon which this claim is made is, that the assessors were chargeable with various mistakes and irregularities, amounting to violations of law, in making their assessment on his property, by misdescription, by classing together lots and parcels of land, which ought to have been taxed separately, and by separating into different parcels estates, which should have been combined into one parcel, and taxed together; also, that, in regard to certain personal *58 property, the plaintiff has been taxed for shares, for which he was not legally taxable.
The first and great question to be considered, before we can begin to inquire into these irregularities, is, whether assumpsit for money had and received will lie against the city, provided such irregularities are shown, and if the assessors acted contrary to the directions of law, in the details of their proceedings in the assessment of taxes. There is another mode of proceeding provided by law, (by application for abatement and by appeal,) well adapted to correct all errors and mistakes, to relieve the party taxed in regard to all those particulars, in which the irregular proceeding can act injuriously upon him, and to confirm and hold good that which upon revision appears regular and conformable to law. When assumpsit lies to recover back money paid, it proceeds on the ground, that the tax is void, that the plaintiff has paid it upon compulsion, and that the city, into whose treasury it has passed, in equity and good conscience cannot retain it. It follows, that if the whole proceeding is void, and the plaintiff can recover his money back on that ground, it being too late to assess the taxes of a past year again, the plaintiff will avoid paying those sums, which it is conceded were well assessed, and which he is bound equitably, as well as legally, to pay.
The. question then may be asked, why has the action for money had and received been sustained in any case ? To this question it may be proper to oiler an answer, and attempt to point out the distinction, upon which the cases rest.
We are inclined to think, that the maintenance of an action to recover back money paid for a tax, (except perhaps in case of a parish tax, in favor of a person of another denomination, under the provisions of the constitution of Massachusetts. Murray v. First Parish in Gloucester, 2 Dane Ab. 330, and other cases there cited,) is of comparatively recent origin.
The common course was, it is believed, to bring trespass against the assessors, in all cases where the plaintiff intended to hold that he was not liable at all, and that the tax was wholly void. It was not brought against the collector, because he was *59 justified by his warrant from a tribunal of competent jurisdiction ; but against the assessors. It proceeded on the ground, that as in trespass all are principals, including those who command an illegal act to be done; and as the assessors had issued a warrant to a subordinate executive officer commanding him to levy a tax upon the plaintiff,-in a case where they had no authority, and to take his property or person in case of non-payment, the service'of such a warrant was an ilegal act, done by their command, and was in theory of law a trespass, for which an action would lie. In the case of Stetson v. Kempton, 13 Mass. 272, decided in 1816, it was held that trespass against the assessors would fie, although the sum assessed on the plaintiff was laid and assessed by a vote of the town, to raise money for the defence of the town against a pubic enemy, such being a purpose for which the town, as a corporation, had no authority to raise money by taxation. The objection was there taken, and the force of it was to a certain extent admitted; but it was held not to be a good defence, because, as the court said, “ if the assessors are not fiable to an action for causing an arrest, or the seizure of property, for the nonpayment of an ilegal tax, it is difficult to find any remedy for an injured citizen in cases of this nature.” They add, hypotheticaly, that “ if an action would fie against the town, it could only be for the money actualy received into the treasury.” That was a case, it will be observed, in which the plaintiff’s property had been actually taken on a warrant of distress.
Here, perhaps, is the first intimation that an action may be maintained against the town, and of the principle, on which it can be maintained; it is, that money has been actually brought into their treasury by their unauthorized, and of course ilegal act, which in equity and good conscience, they cannot retain; and this, not for the damages caused by the seizure and sacrifice of property distrained, and not for the expenses incurred, but simply for the money, which they have actually received without' right. Such a remedy, if it exist at al, can upon principle apply only to a case where a town or city levy money for their own use, without authority, and not where they oi *60 tneir officers assess and collect money for the state, county, or school district.
In 1824, an act was passed, St. 1823, c. 138, § 5, having an important bearing on this subject. It provides that the assessors of cities, towns, districts, parishes or religious societies, shall not be made responsible for the assessment of any tax, when thereto required by the constituted authorities thereof; but the liability, if any, shall rest solely with said city, &c., and the assessors shall be responsible only for their own integrity and fidelity. This provision was extended to assessments on school districts by St. 1833, c. 166 ; and was reenacted in Rev. Sts. c. 7, § 44.
The first case, we believe, in which an action for money had and received, to recover back a tax illegally assessed, was maintained, was that of Sumner v. First Parish in Dorchester, 4 Pick. 361. That was an action to recover back a parish tax, brought by one, who was not a member, and not liable to taxation, so that the tax was wholly unauthorized as against him, and void. The court refer to the statute of 1823, taking away the remedy against assessors; so that if this action would not lie, the party illegally taxed would be without remedy. The court further added: “ Upon common principles, the corporation having received the money of the plaintiff, to which they have no right, and placed it in their treasury, must be liable to refund it, in this action.”
This was probably the basis upon which many actions have been since brought, to recover back money, where the authority, on which it is levied, is wholly void.
But it is held that this rule cannot apply to voluntary payments, but only in cases where a party has been compelled to pay, by that species of compulsion, which the law considers duress. The principle is fully stated and explained in former cases, and is this; that a warrant of distress is in the nature of an execution against a person, wheré there has been no judgment and no opportunity to plead or answer, and therefore, if he refuses to pay, and payment is insisted upon, and that on pain of immediate arrest, or seizure of goods, the payment cannot be deemed voluntary; and if he is not liable to taxa *61 tion, such a menace is duress. If, therefore, he pays, with or without protest, to avoid such duress, he may recover the money back, if he is not liable. Preston v. Boston, 12 Pick. 7 ; Boston & Sandwich Glass Co. v. Boston, 4 Met. 181. But these cases go on the assumption, that the tax was wholly unauthorized and the assessment therefore not irregular only, but void.
One case has been cited, which is supposed to have a contrary bearing and to hold that part of the tax assessed on a party, for which he is not liable, may be recovered back of the town. Torrey v. Millbury, 21 Pick. 64. Perhaps in this case the point was not so much considered, as it would have been, but for the express admission, by the counsel for the defendants, that the plaintiff was entitled to recover back his proportion of $100, which the town had no authority to levy, and for which, therefore, he was not liable to be assessed; and it was this proportion, for which in fact he had judgment. Perhaps, were such a case again under consideration, it might require a careful revision; but the case was decided upon the ground, that the vote for raising the $100 was unauthorized, and without warrant of law, and that the tax therefor was wholly void. We are not aware that any decided case has given sanction to the principle, that assumpsit against the town or city will lie to recover back money, on the ground of any irregularity, error or mistake in fact or in law, in the mode of making the assessment. On the contrary, we think it is now definitely settled by a series of decisions, that in such case, the party’s only remedy is by application to the assessors for abatement. Rev. Sts. c. 7, § 37. If the party obtain no satisfactory relief there, he may complain to" the county commissioners, for a revision. § 39. And it has recently been decided, that if there be any error or mistake in matter of law, in the proceedings of the commissioners, a writ of certiorari from this court will lie to correct them. Newburyport v. County Commissioners, 12 Met. 211.
Here is an easy, direct, simple and practical remedy given by law, adequate and properly adapted to the case, to be pursued promptly, under proper limitations as to time and course *62 )f proceeding, before tribunals, specially constituted, and furnished with all the means of affording prompt and efficient relief against all errors of fact or law, by which a party can be injured by wrong taxation.
This was settled with great deliberation in the case of Osborn v. Danvers, 6 Pick. 98. That was an action for money had and received, and the plaintiff offered to prove that he was taxed for a large amount of personal property, for which he was not liable to taxation in that town. But the court declined going into that question, on the ground, that being an inhabitant, and liable to taxation for personal property, it was essentially a case of over valuation, and that the law afforded him an-easy and appropriate remedy, which was his only remedy. The grounds of the decision are fully stated, and appear to be satisfactory.
A distinction was taken in Preston v. Boston, 12 Pick. 7, which does not alter, but confirms, the doctrine of Osborn v. Danvers. The plaintiff had been assessed as a resident inhabitant, having his domicil in Boston, for his poll and personal estate, and also for real estate. . It was shown that his domicil was not in Boston, but in Medford, where he, was assessed, and he brought his action to recover the sum he had paid, under protest, on his poll and personal estate. It was contended in defence, on the authority of the last case, that as he was liable to taxation in Boston for real estate, whether liable for personal or not, it was but an over taxation, and his remedy was under the statute. But the court took the distinction, that real and personal estate are entirely distinct subjects of taxation; the one taxable in the place where situated; the other, where the owner has his domicil. It was considered that one not domiciled within the city was not within the jurisdiction of the assessors, and that the proceeding as against,him was wholly without authority and void. It was considered that the real and personal estate were distinct integral subjects of taxation, the one exclusively within the jurisdiction of the assessors of the place where situated; the other exclusively within the jurisdiction cf the assessors of the place of the owner’s domicil.
*63 These cases have since been reconsidered and affirmed, Boston Water Power Co. v. Boston, 9 Met. 199. These principles were revised and affirmed, with some explanation of particular expressions in the reports of former cases, at the last March term in Suffolk. Howe v. Boston, 7 Cush. 273. In that case it was again stated as the law of this commonwealth, and as the result of the eases, that there is no case in which it has been determined that one part of the same tax, whether on real or personal estate, laid for a lawful purpose, may be held legal, and another portion illegal and invalid, so that the latter can be recovered back in an action of assumpsit.
It appears to us that the plaintiff’s objections to the form, in which the assessors made up their valuation, and entered it in their books, and upon which they affixed the different parts, which went to make up the aggregate of the plaintiff’s tax, are all objections to matters of detail, which do not go to show that either the tax on the real estate, or the tax on the personal estate, is void. He may be subjected to inconvenience ; as for instance in adjusting their respective rights, as between him and his tenants, where he is taxed for estates held by tenants. This may have arisen, in part, perhaps in whole, from the fact, that the plaintiff brought in no list of polls, and estates both real and personal, not exempted from taxation, according to the notice issued by the assessors, pursuant to law, for that purpose, Rev. Sts. c. 7, § 19.
It was said in argument, that it is not made the duty of the tax-payer to bring in a list, but that it is .optional with him to do it or not, and that the failure to do so does not exempt assessors from doing their duty, according to law. Perhaps it is true, that it is not made the duty of the tax-payer to bring in a list; but it is made a condition precedent; Rev. Sts. c. 7, § 40 ; without which he cannot have the remedies provided for him by law. Section 23 provides that if any person shall not have brought in such list, the assessors shall ascertain, as nearly as possible, the particulars of his personal and real estate, and make an estimate thereof, at its just value, according to their best information and belief; and their estimate, by § 24, shall be conclusive. The effect of the statute therefore is, *64 that a person may, at his option, decline giving in his list, and leave the assessors to ascertain the particulars; but if he does so, he tacitly submits himself to their valuation and assessment ; and of necessity waives all those exceptions, which he could take only on condition of having given in a list. He submits himself, to what is called in some of the earlier statutes, (Anc. Chart. 70, 73,) the doom of the assessors. He may find an advantage in this, because the assessors, according to their best information and belief, may assess him for less property than he is liable for. The statute was founded" on the equitable consideration, that he shall not take this chance, and afterwards, if it is unfavorable, have all the same benefit as if he had given in a true statement, for the information of the assessors, in the first instance. See 6 Cush. 477.
And so, as to the alleged errors, in misdescription and wrong classification of different parcels of estate, putting together those in the occupation of different tenants; how is it possible to decide that these might not all have been avoided, had the plaintiff given in a list of his property, including all these estates, correctly described, properly classified, those occupied by tenants stated, so as to conform to what the plaintiff now says ought to have been done by the assessors ? The statute already cited, § 22, requires that the assessors shall receive, as the true valuation of the property of such individual, the list brought in by him; which has been held to mean, not the appraisement or fixing of value, but the enumeration, description, occupancy, and other particulars of all the real estate of such individual. Newburyport v. Comity Commissioners, 12 Met. 211.
The duty of the assessors is, in the emergency—that of acting without the information which the plaintiff’s list would have given them — to make a list according to their best information and belief; the complaint made in this action is not that they did not make it according to their best information and belief, but the plaintiff offers evidence aliunde, by surveys of land and other means, to show that they did not make it correctly, and according to the truth of facts as they actually existed.
*65 In regard to the alleged mistake in the taxation of personal property, by assessing the plaintiff for shares, which should have been taxed to a ward; we think it is fully answered by the views already stated. In the case of Osborn v. Danvers, it is said: “ It is immaterial whether the excess is caused by including in the valuation property of which the person taxed is not the owner, or that for which he is not liable to be taxed. In both cases the remedy is the same.” To apply that rule, it is immaterial whether the plaintiff held the shares in his own right, or as guardian, or held no such shares at all. It would be a mere excess of valuation, which could not be relieved against in this action. Indeed it was candidly conceded by one of the learned counsel for the plaintiff, that if this was a case of over-valuation, the plaintiff had no remedy in this action.
This case strongly corroborates the remarks made in some of the cases, upon the importance of leaving any party aggrieved by an over-taxation, or other irregularity of assessors, to his statute remedy; and upon the mischiefs which would follow from holding taxes void for any such irregularity. By the statute remedy, the tax-payer must do what is in his power to aid the assessors. If he has ground of complaint, he must make it to the assessors within six months; § 41; ordinarily therefore to the same assessors, who made the valuation, and who know all the facts. If the assessors refuse the relief he seeks, he may make his complaint to the county commissioners ; but he must file his complaint with their clerk within one month after the assessors’ refusal, whilst the facts are still recent and capable of proof and explanation. § 39.
Compare this with an action against the town or city to recover back money illegally assessed, — assessed upon a wrong, erroneous, and mistaken valuation, made by the assessors, without any information from the tax-payer—by showing any such error or mistake in the valuation, an action in which he may recover all such portion of the tax paid, as he can show to have been assessed upon the basis of, or in respect to, such erroneous and illegal valuation. It may be brought at any time within six years from its payment, after the officers have *66 been changed, perhaps some of them dead, and evidence lost Any person, having paid a tax, may go and look over the assessors’ books, and if he can find any one item so erroneous,- he may bring and maintain such an action with costs against the town. There is annexed to the statement of facts in this case, the actual valuation, made by the assessors, of the plaintiffs property for the year 1849 ; it consists of nineteen items of real and personal estate, eight or ten of which are subject to some exception. The ground of the action is, that so far as any one of these can be shown to be illegal, the tax assessed in respect to it may be recovered back.
If such an action could be maintained, it would in effect be to transfer the duty and business of forming a valuation, and assessing and levying taxes, from the domestic tribunal, to which the law has committed it, to a court of justice, settling facts on evidence, by a jury, and with very inadequate means for the performance of that duty, tb the satisfaction of anybody. Deciding, therefore, that such action will not lie, is not deciding.upon a mere question of form of remedy, where a real grievance is shown; but it results from a view of the fundamental principles, on which the whole system of public taxation is founded. Judgment for the defendants.