# REPORTS.

## HENRY H. CROWELL *v.* HOPKINTON.

Towns have no authority, as part of their ordinary powers, to raise money to pay bounties to volunteers in the military service of the United States.

An act authorizing towns to raise money to encourage enlistments, will not be construed to allow towns to raise money, to be paid to persons who have already enlisted.

A vote to pay a bounty to those who have enlisted, or shall enlist, &c., will be held invalid as to those who had enlisted at its passage.

It will be held valid as to those who afterwards enlist, notwithstanding the two objects are embraced in the same vote.

Copies of papers on file, or of record, in the departments at Washington, authenticated by the signature of the Secretary, and the official seal, are admissible in evidence.

IN ASSUMPSIT, the plaintiff alleges, that at a legal town meeting of the town of Hopkinton, duly notified and holden, on the 20th day of August, 1862, said town, pursuant to an article in the warrant for calling said meeting, voted, in substance, to pay to each citizen of that town, who should voluntarily enlist in the military service of the United States, to fill up an old regiment already in the field, for three years, or during the existing war, to aid in filling up the quota of recruits required to be raised in said town, under the call of the President of the United States for three hundred thousand volunteers, the sum of two hundred dollars, on demand. And the plaintiff, being a citizen of that town, and relying, &c., afterwards on the 27th day of August, 1862, at, &c., at the request of said town of Hopkinton, voluntarily enlisted, and on the same day was duly mustered into the military service of the United States, to wit, into the First Regiment of U. S. Sharpshooters, to fill up an old regiment already in the field, to serve for three years, or during the war, to aid in filling the quota of recruits required to be raised in said town, under the aforesaid call of the President of the United States, of all which said town had due notice, to wit, &c., whereby said town became liable, and in consideration thereof, promised then and there to pay the said plaintiff, the sum of two hundred dollars on demand; yet though often requested, to wit, on, &c.

The plaintiff's evidence tended to prove the facts alleged in the declaration.

The article in the warrant for the town meeting was as follows:

"To see if the town will vote to pay a bounty to the soldiers who have, or may enlist, from this town, into the United States military service, under the call of the President of the United States for 300,000 volunteers, for the term of three years, also for the 300,000 nine months militia, in addition to bounties now offered by the State and United States; and to raise money for that purpose."

The vote of the town was as follows:

*Resolved,* That we pay to all, who have enlisted during the war since

the last call for 300,000, $150.00 ; all who will enlist, or have since the first day of August, to fill up old regiments, $200.00 ; all who will enlist for nine months, $75.00 ; all who will enlist for three years, or during the war, after this date, unless honorably discharged, $200.00.

The plaintiff offered a copy of the call of the President of the United States for volunteers, as follows :

*Executive Mansion, Washington, July* 1, 1862. ᐧ Gentlemen :— Fully concurring in the wisdom of the views expressed to me, in so patriotic a manner by you, in the communication of the 28th of June, I have decided to call into the service an additional force of three hundred thousand men. I suggest and recommend that the troops should be chiefly of infantry. The quota of your State would be ———. I trust that they may be enrolled without delay, so as to bring this unnecessary and injurious civil war to a speedy and satisfactory conclusion. An order, fixing the quotas of the respective States, will be issued by the War Department to-morrow.          ABRAHAM LINCOLN.

To the Governors of Maine, New Hampshire, &c.

*War Department, Washington City,* }
*July 7, 1862.* }

Hon. Nath'l. S. Berry, Governor of New Hampshire, Concord :— You are requested to raise, as soon as practicable, for the United States service, for three years, or during the war, two régiments of volunteer infantry, being part of your quota under the call of the President.

By order of the Secretary of War,
C. P. BUCKINGHAM, Brig. Gen'l, A. A. G.

*War Department, Adjutant General's Office,* }
*Washington, October 31, 1863.* }

It appears from the records of this office, that the President of the United States addressed under date of July 1, 1862, a letter to the Governors of Maine, New Hampshire, &c., (other States being named,) calling for their respective quotas of three hundred thousand men, and that the Governor of New Hampshire was requested, on the 7th of July, 1862, to raise two regiments of infantry, and I do certify that the documents annexed are true copies of the aforesaid papers.

E. D. TOWNSEND, Ass't. Adjutant General.

ᐧBe it known, that Edward D. Townsend, who has signed the foregoing certificate is the Assistant Adjutant General of the United States, and that, to his attestation as such, full faith and credit ought to be given.

ᐧIn testimony whereof, I, Edwin M. Stanton, Secretary of War, have hereunto set my hand, and caused the seal of the Department of War of the United States of America, to be hereunto affixed, on the thirty-first day of October, one thousand eight hundred and sixty-three.

[L. S.]          EDWIN M. STANTON, Secretary of War.

To this evidence the defendant objected, because those documents, if

produced, are not the best evidence of the President's call for men, and because the certificates of the Assistant Adjutant General and the Secretary of War are not sufficient to authenticate the said copies. The plaintiff urged that the court would take notice of these documents *ex officio*, as public acts of the Government.

For the defendant it was contended that the vote of the town was unauthorized and illegal, and the town was not bound by it.

The case was tried by the court, who held that the evidence of the President's call was sufficient, and the proceedings of the town were sufficient, to which the defendant excepted.

The court found a verdict for the plaintiff. The defendant moves for a new trial on these, and other grounds not deemed material to be reported.

*George, Foster & Sanborn,* for the defendants, contended that by the act of June Session, 1862, sec. 3, it is provided, that "the several towns and cities, at any legal meeting, may raise money and appropriate the same to encourage voluntary enlistments." Under this provision only could the town of Hopkinton act in the passage of the vote here in question. But the raising and appropriation of money for the payment of a bounty to those who have already received the full consideration promised by the State, or the United States, for their previous enlistment, can in no sense be considered as raising, or appropriating money " to encourage voluntary enlistments," within the terms or meaning of the act; and the payment of money to such parties, however praiseworthy and generous it may be, is a mere gift and gratuity without consideration, and without authority in law. Though a portion of the money voted, might, under proper votes, be properly applied to pay bounties to encourage future enlistments, yet as the vote for that purpose, and for the payment of bounties to those who had already enlisted, were parts of the same measure, which was adopted as an entire measure, and might not otherwise have been adopted, *Pike* v. *Middleton,* 12 N. H. 278, the whole vote must be regarded as illegal.

*Fowler & Chandler,* for the plaintiff, contended that it was competent for the town, in their discretion, to encourage enlistments in any way they deemed most likely to be successful, and, if in their judgment that could be best done by giving bounties to those who had already enlisted, there was nothing in the language or spirit of the act, prohibiting them from so doing.

If the town could not rightfully bind themselves to pay a bounty to those who had already enlisted, their attempted action in that direction, did not invalidate their vote to pay a bounty to those who should enlist. There is no necessary and inseparable connection between the town's action as to past enlistments, and that as to future volunteers. The language of the vote, in relation to those who had enlisted, may be rejected as surplusage. That portion relating to future volunteers may be readily separated from the rest. The vote of the town, if holden in part illegal, is like a statute in part unconstitutional, in which case the uncon-

stitutional part alone is void, unless so inseparable from the other that the court can see that the Legislature could not have adopted one part without the other. *Com. v. Clapp*, 5 Gray 97 ; *Com.* v. *Hutchings*, 5 Gray 482 ; *Com.* v. *Pomroy*, 5 Gray 486, note ; *Wellington*, pet. 16 Pick. 95 ; *Fisher* v. *McGim*, 1 Gray 1 ; *Warren* v. *Charlestown*, 2 Gray 84 ; *Railroad* v. *State*, 29 Ala. 578 ; *State* v. *Perry Co.*, 5 Ohio, 497 ; *People* v. *Hill*, 7 Cal. 97 ; *McCulloch* v. *State*, 11 Ind. 424 ; *Meshmier* v. *State*, 11 Ind. 482 ; *Campbell* v. *Union Bank*, 6 How. (Miss.) 625 ; *State* v. *Copeland*, 3 R. I. 33 ; or like the report of Road Commissioners laying out a highway, which may be rejected in part, where they have exceeded their authority, and accepted for the residue ; *Pierce* v. *Somersworth*, 10 N. H. 369 ; *Patten's Pet.* 16 N. H. 277 ; or like the award of referees, which may be rejected so far as beyond the submission, and enforced so far as within it ; *McBride* v. *Hogan*, 1 Wend. 326 ; *Clement* v. *Durgin*, 1 Greenl. 300 ; *Gordon* v. *Tucker*, 6 Greenl. 247 ; *Cromwell* v. *Owings*, 6 Har. & J. 10 ; *Peters* v. *Pierce*, 8 Mass. 399 ; *Dickey* v. *Sleeper*, 13 Mass. 244 ; *Skillings* v. *Cooledge*, 14 Mass. 43 ; *Cox* v. *Jagger*, 2 Cow. 638 ; *Bacon* v. *Wilbur*, 1 Cow. 17 ; *Cotton* v. *McTavish*, 10 G. & J. 192 ; *Gibson* v. *Powell*, 2 Sm. & M. 712 ; *Merrill* v. *Gardner*, 40 Me. 232 ; *Strong* v. *Strong*, 9 Cush. 563 ; *Chase* v. *Strain*, 15 N. H. 539 ; *Tracy* v. *Herrick*, 25 N. H. 381 ; or like a by law consisting of several distinct parts, in which case, though some may be void, the rest are as valid as if the former had been omitted ; 2 Kyd Corp. 155 ; Ang. & Am. Corp. 301, sec. 6 ; *Fazakerly* v. *Wiltshire*, 1 Stra. 469, per Pratt, C. J., & Powys, J ; S. C. 11 Mod. 353 ; *Harris* v. *Wakeman*, Sayer 256 ; *Lee* v. *Wallis*, 1 Keny. Ca. 295 ; *Rex* v. *Coopers' Co.*, 7 T. R. 549 ; *Rex* v. *Feversham*, 8 T. R. 356 ; *Rogers* v. *Jones*, 1 Wend. 237. The principle is too well established and too familiar to need the citation of authorities, that where any body, legislative, municipal, or corporate, any tribunal, or agent is clothed with limited powers, an attempt to act beyond them does not vitiate legitimate action, within the scope of their authority, provided such unauthorized action is separable, and can be readily distinguished from that which is authorized and valid. This principle embraces the case here.

BELL, C. J. It forms no part of the ordinary duties of towns to encourage the enlistment of soldiers by bounties, or otherwise. They may be specially authorized by statute, perhaps, to raise money by tax or loan, and to apply it to such purposes, or they may be required to perform duties of that kind, but it was long since decided here before the commencement of our Reports, that they could not do so by virtue of their general powers, and it was so held in Massachusetts, in *Stetson* v. *Kempton*, 13 Mass. 272. In *Gove* v. *Epping*, 41 N. H. 545, it was held that "votes to raise or pay money for purposes other than those prescribed by law are void, and towns cannot be compelled, and generally will not be permitted, to carry such votes into effect."

The power of the town to raise and appropriate money for the purpose of encouraging enlistments, is derived from the statute relied up-

on in this case, and is limited to the cases prescribed in it. That statute, 1862, ch. 2580, sec. 3, page2578, provides that "the several towns and cities, at any legal meeting, may raise money, and appropriate the same, to encourage voluntary enlistments." It is broad and general in its terms, and is to receive a reasonable construction, giving to all its terms their usual and natural signification. No doubt is suggested as to any of these, except the phrase "to encourage enlistments." As to this it is said, that it was competent for a town, in their discretion, to encourage such enlistments, in any way they deem most likely to be successful and beneficial. If, in their judgment, such enlistments were most likely to be promoted by giving bounties to those who had already enlisted, nothing in the language or spirit of the act prohibited it. But we think it would not be enough to sustain the proceedings of a town, that in their judgment the measures adopted were calculated to promote enlistments. They must tend to produce that effect in the judgment of the court which is to pass upon the validity of their acts. It is not the question, what is prohibited, but what does the statute authorize. The power given is to encourage voluntary enlistments. If it had been the intention of the legislature to authorize donations to those who had already enlisted, no one would suppose that the words of the act were either suitable or sufficient for that purpose, and explicit terms would have been used. In our view, the payment of money to men already in the service was in no way calculated to encourage enlistments, and the vote of the town, so far as it proposed to give such bounties, was unauthorized and void.

The declaration alleges and relies upon so much of the vote of the town as proposes to pay a bounty of $200 to those who should enlist, &c. So much of the vote, if it stood alone, is not objected to, and it seems to us well authorized by the statute, and by the article in the warrant for the meeting. But it is objected that, as the vote is to pay all who will enlist, or have enlisted, since the first day of August, to fill up old regiments, $200, embracing thus in one vote the legal and illegal offer, it is void for the whole. But this seems to us contrary to all sound rules of interpretation. Where an act is invalid and void, because it is prohibited by law or statute, as an offense, or because it is fraudulent, or in violation of good morals, or of public policy, a contract to do such act will be wholly void, though there may be parts of the agreement which, if they stood alone, would be free from objection. Perhaps even in such cases, where the agreement, or instrument containing it, is not declared by statute to be absolutely void, the rule may be, as some contend, that, if one upon good consideration promises to do two things, one legal and the other illegal, he shall be held to do that which is legal, unless the two are so mingled and bound together that they cannot be separated. 1 Pars. Cont. 380; *Norton* v. *Simmes*, Hob. 12; 14 H, 8, 25; Brooks' Ab. 326; Taits 37; Pigot's case, 11 Co. 27; *Newman* v. *Newman*, 4 M. & S. 70; *Curtis* v. *Leavitt*, 15 N. Y. (1 Smith) 14, 96.

But there is a large class of cases where the acts of parties and their contracts are void, because they are acts done by a party without author-

ity, or they contravene some maxim of the law, or rule regulating the rights of persons or property; such are contracts by insane persons, infants, married women, by attorneys, executors, guardians, in cases beyond their authority, or by corporations to do things *extra vires*. In all these cases, the other contracting party, being capable, is bound by his contract, and in the latter classes, the parties who exceed their powers, are bound to perform all they were capable of legally contracting for, though the rest of the contract is void if they admit of separation. *Bank of Australasia* v. *Bank of Australia*, 12 Jur. 189; S. C. 6 E. F. Moore 152; 6 Har. Dig. 137.

In the present case, the objection is simply that the powers of the town are limited, and the vote unauthorized, but the parts of the vote which are open to this objection are readily distinguishable, and the vote is therefore invalid only so far as there was a defect of power.

If the question were of the power of the selectmen to raise money by tax or loan, under a vote to raise a given sum for all the purposes of the vote, there might be a just doubt, but the town have it in their power at any time to pass such votes to raise money as should be clearly within the law.

Objection is made to the sufficiency of the authentication of the President's letter to the Governor, and of the letter as evidence of the President's call for 300,000 men. The laws of the United States provide for the mode of authenticating copies of the records and papers in the public offices of the National Government. By the Act of Congress of Sept. 15, 1789, the Department of Foreign Affairs, since called the Department of State, was established, and by section 7 of the last act, the Secretary was authorized to cause a seal of the office to be made, &c., and all copies of records and papers in the said office authenticated under the said seal, are made evidence equally as the original record or paper. And by the act of February 22, 1849, entitled "An act for authenticating certain records," it is provided that all books, papers, documents and records, in the War, Navy, Treasury and Post Office Departments, and the Attorney General's Office, shall be copied and certified under seal, in the same manner as those in the State Department may now by law be, and with the same force and effect. Under these statutes no doubt can be reasonably entertained that the papers produced are copies duly authenticated of papers on file, or record, in the Department of War, and equally evidence as the original record or paper.

It is obvious that the instruments thus laid before us are very informal. Instead of the usual form of acts of State, authenticated by the national seal, and the attestation of the Secretary of State, they are in the form of letters to the Governors of the States, giving them notice of what the President has decided to do. They do not purport to be the decrees, orders, or proclamations, by which the thing is done. But we have no constitutional or statute provision directing in what manner the decrees or orders of the President shall be authenticated, or published. He is controlled in this respect only by his own sense of propriety, and the rights of the citizen must not be impaired by any de-

parture from customary forms.   As it is admitted, there is no other evidence of the call for men here in question, we feel bound to take notice of it as a public act of the Government; and this exception is overruled.

*Judgment on the verdict.*