# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTY OF MIDDLESEX, OCTOBER TERM 1837, AT CAMBRIDGE.

PRESENT:

Hon. LEMUEL SHAW, Chief Justice,
Hon. SAMUEL PUTNAM,
Hon. SAMUEL S. WILDE,        } Justices.
Hon. MARCUS MORTON,
Hon. CHARLES A. DEWEY,

---

## Samuel Hobbs *versus* The Inhabitants of Lowell.

A highway may be established in this Commonwealth by a dedication on the part of the owner of the soil, and an assent thereto on the part of the public.
But whether the assent of the public is necessary to an effectual dedication, and if necessary, in what manner it is to be given or withheld, *quære*.

This was an action on the case, to recover damages for an injury sustained by the plaintiff, by reason of a defect in a highway in the town (now city) of Lowell, called Merrimack street.

At the trial, before *Morton* J., it appeared that there was an ancient county road leading through that part of Chelmsford which now constitutes Lowell, and thence through Tyngsborough to Dunstable. In 1822 that road was stopped up by an impassable canal, fences, and dwellinghouses, erected and made by a corporation called The Proprietors of Locks and

Canals on Merrimack River, and the travel on it entirely prevented. At the same time Merrimack street was opened by the same corporation, in the general direction of the old road, passing over the canal by a bridge, and falling into the old road at each extremity. From that time the travel was wholly diverted into this street, which was to appearance a part of the same county road, and all traces of the old road were obliterated.

The town of Lowell was incorporated in 1826. In 1827 the selectmen of the town directed generally, that guide posts should be set up in such places as required them, and pursuant to that direction, one of the selectmen set a guide post at the corner of Central street and Merrimack street, directing on the latter street to Tyngsborough and Dunstable. On Merrimack street were a church and parsonage, leased to a religious society, and used as a place of public worship. On the side of the street, opposite to the church, was an excavation about eight or ten feet deep, extending into the travelled part of the street, where the injury to the plaintiff was received. The street was otherwise a good road. There was no further evidence of acceptance of the street on the part of the town, or of any work or repairs done thereon by the authority of the town.

On the 19th of October, 1828, the plaintiff was passing with a horse and chaise, in the night time, between certain points in Lowell, and fell into the excavation. Prior to shutting up the old road his course would have lain through that road, and after the discontinuance of that road the only travelled way between those points was through Merrimack street, and across the bridge over the canal.

A nonsuit was ordered, subject to the opinion of the Court.

The case was submitted to the Court in 1836, without argument.

*Lawrence* and *Hopkinson*, for the plaintiff.

*Smith* and *Mann*, for the defendants.

*Oct. 20th.* SHAW C. J. delivered the judgment of a majority of the Court. This cause was submitted to the decision of the Court, without argument; it has been a considerable time under consideration, partly because it involves a question of great public

importance, and partly because the Court have not been able to come to a result with entire unanimity.

The question is, whether the street in which the accident happened has become a highway by dedication, so that the town of Lowell, and now the city of Lowell, is bound to keep it in repair, liable to an indictment for not keeping it in repair, and responsible to individuals, on the statute, for damage sustained by the want of such repair.

In the case of *Hinckley* v. *Hastings*, 2 Pick. 162,* the Court, in giving their opinion, after recognizing the principle of dedication of a highway, as admitted and practised on in England, add, " but it is not known that in this Commonwealth, a way has ever been made by dedication." We do not consider that this was a decision of any point in that case, because there was no evidence by which an express or implied dedication of the soil, by the owners, to the public, could be proved. It was the case of a highway, laid out by a public body, the selectmen of Boston, having competent authority to do the act, but the record of which was so imperfect and ambiguous, as to render the act void for uncertainty. The defendant also relied upon a use and enjoyment for six years, which is clearly not sufficient to establish a public easement, by prescription or presumed grant, by adverse use. The only other evidence was an executory agreement between a vendor and purchaser of real estate, that a street should be laid out over the land of the vendor, adjoining the land sold ; this manifestly implied that a street should be laid out, in due legal form, by the selectmen having competent authority by law for that purpose, and so it seems to have been understood and acted upon, by all the parties interested.

This case raises the question, whether under any possible circumstances, a highway can be established and recognized in this Commonwealth by dedication, that is, by an appropriation by the owner of the soil, to the use of the public for a highway, and the adoption thereof by the public ; because it is scarcely possible to imagine a case of dedication more clearly and fully proved, than in the present case. The owner of the

---

* See 2 Pick. 2d ed. 164, Perkins's note 2.

soil laid out and fitted this section of road for public travel; the old highway, for which it was substituted, was not only afterwards disused, *de facto*, but was obstructed, so as to render it physically impassable. The town of Chelmsford, whose duty it was to keep this section of the old road in repair, if they did not intend to adopt the new one as a substitute, instituted no prosecution against those who obstructed it, but, on the contrary, the surveyors of highways, the selectmen, and the corporation itself, acquiesced in the change, until the territory was set off into a new town. The way in question was an open highway in actual use, when the town, by the act of incorporation, became *de facto* liable to support and repair all highways within its limits, and they have taken no measures to reëstablish the old road from that time to the present. This highway was so in actual use by the public, from 1822, when it was opened, until 1828, when the accident occurred. The act of the owners of the soil in appropriating the land to public use as a highway, is as distinct and unequivocal, as could possibly be, without an instrument in writing; and the actual use of the highway by the public and the acquiescence by all persons in authority, whose assent could be considered requisite, are as clearly proved as tacit acquiescence ever can be.

The question then recurs, whether there can be a highway by such dedication. The principle seems to have been long recognized as a settled principle of the common law. In *Lade v. Shepherd*, 2 Strange, 1004, it was held, that by such dedication, the public became entitled to the use of the land for all purposes of passage, although the owner did not thereby become divested of the absolute right of property in the soil. But the same is true of the right of every proprietor, whose land is appropriated to the public for a highway, in however formal and solemn a manner such appropriation is made. In many recent cases, the principle has been recognized as a settled principle of the common law, although many cases have occurred, in which questions have been discussed, as to what acts constitute such a dedication. The great question has been, whether particular acts have been such as clearly to indicate the intent of the owner of the soil to appropriate it to public use.

In a case, where a passage had been opened through private grounds, from one point in a public street, to another point in the same, though circuitous and narrow, yet being to some extent useful, and having been long used by the public, it was held to be a highway by dedication. *Rex* v. *Lloyd*, Campb. 260 ; *Rugby Charity* v. *Merryweather*, 11 East, 376. And such dedication may be presumed from circumstances, from which the assent of the owner of the soil may be inferred. *Stafford* v. *Coyney*, 7 Barn. & Cressw. 257 ; *Rex* v. *Barr*, 4 Campb. 16 ; *Jarvis* v. *Dean*, 3 Bingh. 447. The general principle was well stated by *Chambre* J. in *Woodyer* v. *Hadden*, 5 Taunt. 137. This case was much discussed ; there was a difference of opinion, whether the facts in the case established a dedication, though all agreed in the general principle. The learned judge says, " No particular time is necessary for evidence of a dedication ; it is not, like a grant, presumed from length of time : if the act of dedication be unequivocal, it may take place immediately : for instance, if a man builds a double row of houses opening into an ancient street at each end, making a street, and sells or lets the houses, that is instantly a highway."

The general doctrine seems to result from a few well settled principles of the common law. The case supposes a highway *de facto* in actual use by the public, and who shall say that it is not a highway to all purposes ? Not the owner, for he has assented to it, and is in effect estopped by his own act *in pais*. Not the public, for they have the use and benefit of it.

Since the case of *Hinckley* v. *Hastings*, 2 Pick. 162, the case of *Cincinnati* v. *White*, 6 Peters, 431, has been decided by the Supreme Court of the United States. This distinctly recognizes the doctrine of dedication, as having a competent foundation in the principles of the common law as adopted and practised upon in this country, for the establishment of a highway ; indeed its fitness and utility are recognized as peculiarly applicable to this country, where, in case of most of the cities, thickly settled towns and villages, so rapidly springing up, the right of the public to the streets and highways rests almost invariably upon this foundation.

The only serious difficulty in the application of this doctrine,

arises from the question, whether the assent of the public is necessary to the complete dedication of a highway, and if it is, how that assent is to be manifested or withheld. The objection is, that it would be a great hardship upon towns, if an individual could lay open a way upon his own land, throw it open to the public, then oblige the town to charge themselves with the maintenance and repairs of it. In a very recent case in England, *Rex v. Leake*, 5 Barn. & Adolph. 469, it was held, that to constitute a highway, by dedication, the assent of the parish was not necessary ; but when a highway had been in fact used by the public for a series of years, the parish were indictable for not repairing it. It is manifest however, that there is very little analogy between the character, powers and duties of parishes in England, and those of towns in this Commonwealth. Almost the only point of resemblance is, that they are respectively bound to repair all highways within their limits, where other provision is not made by law for the purpose. The great point of difference is, that in this Commonwealth, towns have the power in a certain course of proceedings, to lay out town ways, which are in effect public highways, within their limits ; they are also recognized as parties, in all proceedings for establishing new highways, for the support of which they are to be responsible.

But we consider that the questions whether the assent of the public is necessary to an effectual dedication, and how it is to be given or withheld, do not arise in the present case, and the Court gives no opinion upon them ; they must be considered as open for consideration whenever they occur. In the present case, the town of Chelmsford, the town and city of Lowell, the county and the Commonwealth, by their respective town and city officers, grand juries and public prosecutors, by forbearing to proceed against those who have stopped up the old highway, and substituted the new one for it, have respectively expressed their assent to this dedication ; and it is too late now for the city to say this road is not a public highway. The opinion of a majority of the Court is, that the nonsuit ought to be taken off, and a trial had on the merits.

MORTON J. dissenting. It is with diffidence that I dissent from the opinion of my learned brethren, which has just been

so fairly and so ably stated. But not being able to bring my mind to the conclusion which they have adopted, however much I may distrust my own judgment, I feel bound to follow its dictates.

The question for our determination is, whether the place, in which the plaintiff sustained the injury complained of, was a public highway which the town of Lowell was bound to repair and support. The way in question was called a public street; used as such; and the travel upon it was great. It was originally made and prepared by a private corporation, which owned the land over which it passed. It extended from one point to another in the old highway; and was more direct and convenient, than the road as formerly travelled. When the new way was completed and thrown open for public use, the old one was closed and rendered impassable. The town never acted upon the subject; never made any repairs upon the new way, nor did any other act indicating an acceptance or adoption of it. But it continued open and convenient for public use, and was actually used by the public for six years before the accident.

These facts present a question of great practical importance to our towns. If this be a public highway, then any land owner may, for his own interest and without regard to public convenience or necessity, establish a highway and subject the town within which it lies, to the burden of supporting it. For a man may undoubtedly divide and fence his land in such form as he pleases, and no one has a right to object. If he leaves a strip of a suitable width for a road, neither the town within which it lies, nor individuals, can obstruct it. And if people choose to travel over it for a few years, the town becomes chargeable with its support, without its consent, and without having had an opportunity to be heard upon the question of its establishment.

If the facts in this case, are sufficient evidence of the legal existence of a highway, it must be upon the ground of dedication. I do not doubt, that the recent English authorities go far enough to support this as a valid dedication; and that had these facts occurred in England, the common law of the present day would recognize them as legal proof of an established highway. And by these authorities, it would seem that the assent or dissent of the corporation, would not be deemed of any impor-

tance. But it appears to me, that the common law upon this subject has been carried forward in England, and that as it stood at the time of the dissolution of our connexion with the British government, it would not have supported this action. See Wellbeloved on Highways, 56, and cases cited. The common law has force here only by virtue of the adoption of it by the people, in their original legislative capacity. It must therefore remain as it stood at the time of its adoption, until altered by legislative authority.

As far as the habits of the people, the state of society and the civil institutions of the two countries are similar, it may be very safe to take the opinions of the learned judges who preside in the English courts, as evidence of what the common law is. And where a change of circumstances in that country may render a modification of principles necessary, they may safely be followed in this, because a similar change here may require a similar modification. And the frequent coincidence of opinions and reasoning between the judges of that country and of our own, exposes us to the danger of following the adjudications of the English courts, in cases where the dissimilarity of the two countries require their respective courts to diverge.

But I do not intend to examine the state of the common law, on this subject, at the adoption of our constitution ; because I do not mainly rest my opinion upon the principles of the common law. For whatever might have been the English doctrine of dedication of highways, at any time, I cannot persuade myself, from the most thorough investigation which I have been able to make, that it ever was adopted in this State. I intend to confine my reasoning entirely to the subject of highways, because this case does not require me to go further, and because there are reasons applicable to highways which do not apply, with the same force, to dedications for other purposes.

The sixth article of the sixth chapter of the constitution provides, that " all laws which have heretofore been adopted, used and approved " and " usually practised on in the courts of law, shall remain and be in full force, until altered or repealed by the legislature." If the law of dedication be now in

force, it must be, because it was included in this popular enactment, and it must have been the law of the land before and ever since the adoption of the constitution. To bring this, or any other doctrine of the common law, within this constitutional provision, it must be shown affirmatively that it had been adopted, used and approved and usually practised on in our courts. For this purpose the adjudications and practice of the courts, not only before but since the adoption of the constitution and down to the present day, are good evidence. But if no decision or practice of the courts recognizing the doctrine, can be shown, it certainly is not only a failure to sustain the burden of proof, but raises a strong negative presumption that no such doctrine ever prevailed. From the very frequent recurrence of questions in relation to the establishment and existence of highways, it must be presumed that the convenient principle of dedication would have been resorted to, had it been supposed to be a part of our law. It is true that highways are often proved to exist by evidence of user. Indeed, in actions and indictments against towns for neglect to keep them in repair, the most common mode of proving their existence is by public usage. But in every instance which has come to my knowledge, a *user for such a length of time* as would raise a presumption of their legal establishment upon other grounds than that of dedication, has been required.

In the case of *Hinckley v. Hastings*, 2 Pick. 162, we find it expressly laid down, that " *it is not known that, in this Commonwealth, a way has ever been made by dedication.*" This, as I think, is not a mere doctrine of the learned judge who gave the judgment of the Court ; but a position essential to the decision, and on which it rests. If, at that time, the Court knew of no adoption of the doctrine of dedication, it furnishes strong evidence that it did not exist. This seems to have been so clear in the mind of the learned judge, that he did not deem it necessary to go into an argument or a history of the judicial or legislative action on the subject, to support his assertion. A brief review of the matter will, as I think, strongly tend to support the position here laid down.

It is believed that in England dedication is the only common law mode of acquiring highways. The omnipotence of par-

35*

liament can create them. And the existence of them may be procured by prescription ; but this would only be a mode of proving the dedication or the legislative creation. It is sometimes said that a highway may be licensed or established by means of the writ of *ad quod damnum ;* but such a process applies only to the change of existing ways, and not to the establishment of new ones. See Wellbeloved on Highways, *pp.* 40– 67, and the authorities cited. This author, *p.* 41, says, " this writ appears to be calculated only for the purpose of changing and diverting highways, and can hardly be applicable to the acquisition of a right of way, where there is no previously existing one to be given in exchange for it." Again, *p.* 41, he says ; " We may conclude, therefore, that the title to all highways must be derived from the one or the other of the two following sources ; first, from custom, usage, or possession, as above described ; or, secondly, from that all-powerful instrument, an act of parliament." Dedication is undoubtedly the common mode of acquiring highways in England. The doctrine, therefore, in that country, is very important and the interest of the public has induced the courts to extend it to meet the growing and varying wants of the community. But here is no necessity for its original introduction, or inducement to extend it.

The English mode of acquiring highways was found to be so inadequate to the wants, and so ill adapted to the situation, of our ancestors, that at a very early period, they deemed it necessary to legislate upon the subject and to provide a convenient mode of establishing suitable highways for the accommodation of the growing population of the country. This mode was well calculated to provide *such and only such ways* as the public exigencies might require ; to guard the private rights of individuals, and to protect the municipal corporations from unnecessary burdens. These enactments, which commenced as early as 1639, have often been revised and with various modifications have, in substance, been continued down to the present day. They cover the whole subject, entirely supersede the English modes of establishing highways, and not only negative the adoption of any of the English rules, but if they had existed, would. by necessary implication, have re pealed them.

We have two kinds of public ways, viz. town ways and common highways, which towns are bound by law to support. For the neglect of this duty they are liable to indictments, and in case of individual injury, to civil actions. The method of establishing these ways is clearly pointed out in the statute. Proper tribunals are empowered to inquire when and where new roads are needed, and to proceed to lay out such as the public exigencies may require, having due regard to private rights and public burdens. It must be presumed that they will exercise their discretionary power properly and wisely. At any rate, their judgments may more safely be relied upon than the acts of individuals, who, in opening and imposing upon the towns public highways, will be more likely to consult their own interests than the abilities of the towns or the accommodation of the public.

On the whole, I am constrained to believe, that, in this State, public ways can be established, only in the manner prescribed by statute.

In relation to one kind of highways, viz. town ways, the point seems to me to be adjudicated in the cases *Commonwealth* v. *Newbury*, 2 Pick. 57, and *Commonwealth* v. *Low*, 3 Pick. 408. In the former, our late learned and wise chief justice says, " It is difficult to conceive how a town way, merely as such, can be established in any other manner than by laying out for that particular use, by the selectmen of the town, by virtue of the statute respecting highways. It seems to be intended by the legislature, that no such ways shall acquire the character of private town ways, except in the form therein provided, and especially by the express allowance of the inhabitants in regular meeting assembled." And in the latter the adjudication of the Court concludes in these words ; " We are therefore of opinion, that a town way can be established only in the mode prescribed by *St.* 1786, *c.* 67."

I can discover no distinction, in this respect, between town ways and common highways. They both are alike the creatures of statute. And it seems to me that there is quite as strong reason to believe, that the legislature intended to confine the establishment of public highways to the laying out by the tribunals from time to time created for that purpose in the statutes.

This view does not at all interfere with the recognized modes of proving the existence of highways, and the liability of towns to support them. Legislative acts, charters, decisions of courts, as well as grants, deeds, and other private instruments, may be presumed from use, acquiescence, and lapse of time. The laying out of highways may be proved by user, as well as by record. And is it not more reasonable and safe, to require a length of time sufficient to raise a presumption of a legal establishment, than to allow a user of six years, and perhaps less, to establish a way by dedication ?

Whether the validity of a dedication depends, in any degree, upon the assent of the town, or takes effect independently of any corporate action, is not very clearly settled by the authorities. The modern cases, I believe, favor the latter branch of the alternative. If the assent of the town were necessary, and it had power to give it, I hold that it cannot be implied. There must be an express vote. And this must be proved by the record, or by such other evidence as may supply the defect of missing records. Although I doubt whether the facts warrant the inference which my learned brethren have drawn from them, yet I would not dissent from them on this point, and I do not mean to place any reliance upon the insufficiency of the facts, but to rest my opinion entirely upon legal ground.

And I contend further, that towns have no power to give any assent to the grant or dedication of a way. If an individual should convey to a town a suitable strip of land for the express and sole purpose of being made a highway or town way, and the town should by vote accept the grant and establish the way, it would not thereby acquire any legal existence.

Towns are the mere creatures of the law, and possess no powers other than those specifically enacted by statute. See *Stetson* v. *Kempton et al.* 13 Mass. R. 272. No authority is given to towns to act originally on the subject of laying out ways. The selectmen have authority to lay out town ways. In doing this, their power is in some respects of a judicial character. This they must first properly exercise. Then their acts must be laid before the town for its acceptance or rejection. This gives jurisdiction to the town, and it is the only way in which they can act on this subject. It is a reviso-

ry, and not an absolute power.  They may reject or accept, but they cannot originate.   It seems to me that a town has no authority to enter into a contract with the owner of land to open a road or street ; and that money voted and assessed for the purpose of carrying such contract into effect, could no more be collected than the money assessed to pay soldiers, as in the case of *Stetson* v. *Kempton et al.*   Much less could the town give to such way the character of a highway, either a town way or a common highway, so as to render the inhabitants liable for its maintenance.   If therefore the doctrine of dedication prevails here, it must be by its own force and independent of the action of the town.   And such seems to be the doctrine of the latest English authorities.   Such doctrine, if it prevail here, seems to me to endanger the rights of towns, and to make the location of ways depend upon private views and interests rather than the public necessity and convenience. Any land owner may throw open a way across his land, and if people choose to pass over it for a few years, it becomes a public highway, and must be supported by the town within which it lies.   And neither the town nor any public tribunal can prevent it ; for if it do not expose people to danger, no one would have a right to close or obstruct it.

I can discover no utility in this law of dedication, or necessity for its introduction.   Whenever a way may be supposed to be needed, we have convenient tribunals established to whom applications may easily be made, and if a way be really required, we are bound to presume, and we have good reason to believe, that it will be established ; and upon terms consistent with the rights of all.   But it should not be in the power of individuals to open roads and throw them upon the public, against the judgment of those appointed to watch over its interest and welfare.

The case of *Hinckley* v. *Hastings*, seems to me to be so similar to this, and, if correctly determined, so decisive of it, that I must ask again to refer to it.   In that case, the defendant pleaded several pleas, one of which was, that for six years before the alleged trespass the citizens had been accustomed to have, use and enjoy, and had used and enjoyed, the *locus in quo*, as a common highway, and that the defendant entered

upon it to remove a nuisance which the plaintiffs had placed there. To this plea there was a demurrer, which was joined. This brought distinctly before the Court the precise question, whether six years use by the public, was proof of the existence of a highway. The Court adjudged the plea to be insufficient on the following ground, as appears in their judgment as reported. 2 Pick. 164. "A user for *six years* does not give a right of way here. In England there may be a dedication of a way, that is, by throwing open a piece of land and permitting the public to use it as a way, without putting up a bar, or the like, to denote that the owner retains his rights over it. But it is not known that in this Commonwealth a way has ever been made by dedication."

Now unless the dedication of a way be made to depend on the assent of the town, (which I think I have shown cannot be the case,) I can perceive no distinction between the two cases. There may be stronger evidence of assent in the one case than in the other. But if this be an immaterial circumstance, I think they are perfectly similar. One was a public street in Lowell, the other in Boston ; and both had been used as common streets for the same length of time. If *user for six years* would be sufficient to establish a highway in the one instance, *the same user* would produce the same effect in the other. And of course the converse of the proposition would be equally true. I entirely concur in the doctrine of the case cited, and think that unless overruled it must be decisive of the case at bar.

For the reasons which I have imperfectly stated, I am irresistibly brought to the conclusion, that the law of the dedication of highways has never been adopted in this Commonwealth, and, therefore, upon the facts reported, that the plaintiff is not entitled to recover.

*New trial granted*